An order in conformity herewith should be settled.

## CANFIELD v. EWING.
### Civ. No. 12501.

United States District Court,
E. D. New York.

Nov. 10, 1952.

John G. Canfield, in pro. per., Joseph N. Dobrovir, New York City, of counsel.

Frank J. Parker, U. S. Atty., Brooklyn, N. Y., Nathan Borock, Asst. U. S. Atty., Brooklyn, N. Y., for defendant.

BYERS, District Judge.

Both parties move for summary judgment, in the absence of contested issues of fact.

The plaintiff, being 65 years of age, attacks the constitutionality of the Social Security Act, Title II, 42 U.S.C.A. § 401 et seq., (Old Age Benefits) in that it is said to be "arbitrary" concerning deductions from sums otherwise payable to an individual under 75 years of age, who has net earnings of $50 per month.

The complaint seeks to recover the sum of $477.90 plus any accumulated amounts at the rate of at least $53.10 per month at the time of adjudication, plus interest and costs and "that the defendant be ordered to pay the sum of at least $53.10 per month to the Plaintiff thereafter and any extra amount due him when his wife becomes 65 years of age."

It is undisputed that such administrative proceedings have been had that a final determination, adverse to the plaintiff, was duly made, whereby the court review contemplated by Section 205 of the Act may be sought, Tit. 42 U.S.C.A. § 405(g).

The defendant's motion, based upon the Answer, asserts the legal finality of the administrative determination and the sufficiency of that proceeding in the legal sense, and that the constitutionality of the challenged section of the Act has been decided by the Supreme Court.

The controversy is narrow and clearly defined, namely, that the plaintiff, having reached 65 years of age on July 21, 1951, became entitled to apply for Social Security payments on August 3, 1951 and made proper application therefor; on September 10, 1951 he received a certificate of Social Security Award stating that he became entitled to Old Age Insurance Benefits under Title II of the Social Security Act, payable monthly at the rate of $53.10, beginning July, 1951.

The certificates states that its reverse side "tells you the conditions under which your benefits are subject to deductions. If you have any further questions, we suggest that you get in touch with our Field Office at the address shown above. Our representatives there will be very glad to assist you in completing the statement required by the law * * *.

"Read the other side of this certificate for the conditions under which these benefits are not payable, and for other important information."

So much of the applicable conditions reads:

"This insurance benefit is not payable for any month in which you are under age 75 and you work for wages of more than $50.00 in employment that is covered by the Social Security Act. This does not mean that because you are entitled to monthly benefits you may not work, but simply that for those months when you do work and earn more than $50.00 you will not be eligible to receive a benefit payment."

Seemingly, the $50 limit has since been raised to $75, which does not affect this controversy.

The plaintiff's application contained a series of questions designed to develop whether he was working for wages of more than $50 a month in employment covered by the Act. The foregoing are expressed in questions 6 to 8 inclusive and as to all of which he wrote "Unconstitutional question." Under the heading of Remarks, the following appears:

"I look upon Social Security as an insurance policy whose premiums have been paid for out of my earnings during the past years and that it is unconstitutional to refuse to pay me my monthly annuity, because I happen to desire to preserve my Life, Liberty and the Pursuit of Happiness' and to refuse to be a party to Special Privilege, Regimentation, Pauperism and Slavery."

The original application, dated July 21, 1951, from which the foregoing has been quoted, was followed by a supplemental application dated August 29, 1951 in which the questions above referred to were answered: "I am my own employer. I was an independent contractor. I am an independent contractor. I am not covered by Social Security." And these applications were followed by an interview with one Charles S. Ferber, who thereon reported under date of October 9, 1951, in the course of which the plaintiff said:

"that he was doing outside house painting. In response to my inquiry regarding his self-employment income, he said, 'It was none of the Government's business, and it was unconstitutional to ask him such a question'. The wage earner was further informed that since his supplemental application did not completely answer the questions regarding the reporting provisions, that his benefits would, therefore, continue in suspense."

Further,

"The wage earner is fully aware of and understands the work deduction clause of the law, and considering the above facts, work deductions should be continued until such time that this wage earner can fully satisfy the statutory requirements."

Administrative Regulations authorized by the Act have to do with the requirement on the part of a given individual seeking to avail himself of its benefit "to submit a written statement in the prescribed manner, certifying that no event has occurred which would * * * subject such benefit to deductions under the provisions of such title. The failure on the part of such individual to submit such statement, properly executed, to the Administration shall cause the suspension of such benefit." Section 404.-701(b), Regulation 4.

The question before the hearing officer, a referee of the Administration, was whether the claimant was entitled to benefits without deduction under the circumstances shown, namely, whether the refusal of the applicant to furnish the requested information justified the Administration in assuming that in fact deductions were justified as though he had testified fully to facts which would lead to the same result.

Seemingly the applicant does not dispute that the regulation is in accord with the Statute, but he asserts the alleged unconstitutionality of the latter in that it discriminates against a man who has reached the age of 65 and is able to work and thus support himself in part until he reaches the age of 75, after which, apparently, he may continue to do the same thing without sacrificing statutory benefits.

The case of Helvering v. Davis, 301 U.S. 619, at page 646, 57 S.Ct. 904, at page 911,

81 L.Ed. 1307, discusses, among other things, the exemptions as contained in the statute in its then form and the opinion states:

"*Fifth:* The tax is not invalid as a result of its exemptions.

"Here again the opinion in Steward Machine Co. v. Davis, supra [301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279], says all that need be said."

The plaintiff is not alone in his criticism of this provision of the law: An article in the New York Times Magazine for July 27, 1952, in commenting upon our distorted ideas about retirement, says:

"The average monthly Social Security benefit is $47 for a retired worker, or $77 for a retired worker and his wife. A stupid rule specifies that these benefits be withheld from a person under 75 who earns more than $75 a month in addition. And this is at a time when, according to the Bureau of Labor Statistics, a couple requires a minimum annual income of $1,800."

Nor did the Court in the Helvering case undertake to sanction the wisdom of the legislation, as appears in 301 U.S. at page 644, 57 S.Ct. at page 910:

"Whether wisdom or unwisdom resides in the scheme of benefits set forth in Title II, it is not for us to say. The answer to such inquiries must come from Congress, not the courts. Our concern here, as often, is with power, not with wisdom. Counsel for respondent has recalled to us the virtues of self-reliance and frugality. There is a possibility, he says, that aid from a paternal government may sap those sturdy virtues and breed a race of weaklings."

The exemptions contained in the Statute in the form in which it was then under examination were broader in scope than at present, since they embraced particular occupations. As to them, the discussion in the Steward Machine case, 301 U.S. at page 584, 57 S.Ct. at page 890 states:

"The classifications and exemptions directed by the statute now in controversy have support in considerations of policy and practical convenience that cannot be condemned as arbitrary. The classifications and exemptions would therefore be upheld if they had been adopted by a state and the provisions of the Fourteenth Amendment were invoked to annul them. This is held in two cases passed upon today in which precisely the same provisions were the subject of attack, the provisions being contained in the Unemployment Compensation Law of the state of Alabama. Carmichael v. Southern Coal & Coke Co. (Carmichael v. Gulf States Paper Corp.) 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245. The opinion rendered in those cases covers the ground fully. It would be useless to repeat the argument. The act of Congress is therefore valid, so far at least as its system of exemptions is concerned, and this though we assume that discrimination, if gross enough, is equivalent to confiscation and subject under the Fifth Amendment to challenge and annulment."

It is true that the attack on this statute as considered in those cases was made by or on behalf of employers, whose payments into the fund were thought to constitute excises, while those of the employees were deemed to be income taxes, Helvering case, 301 U.S. at page 635, 57 S.Ct. 904, and the decisions were generally addressed to the impact of the legislation upon the former. However, it could scarcely be decided by this Court that a different result could be arrived at in response to the argument made by an employee who conceives that the law does not operate fairly as to him, in that it fails to compensate him for the old age insurance which he was supposed to be buying through the enforced levy upon his earnings, prior to reaching the age of 65.

It must be confessed that there is an element of inherent justice in the plaintiff's contentions to which the Court deems itself foreclosed from yielding, for reasons which it has been the effort to explain.

Bearing in mind that it is wages for labor performed, not income from property owned, if any, that sets in motion the de-

ductions referred to, the incongruity is manifest of the language quoted from the certificate:

"This does not mean that because you are entitled to monthly benefits you may not work, but simply that for those months when you do work and earn more than $50.00 you will not be eligible to receive a benefit payment."

If this law does not interpose such obstacles as it can for ten years, to the understandable desire of a man of 65 to exercise his skills for the purpose that once were part of the American way of life, it must be confessed that I have failed to grasp its true meaning.

The proceedings under review were conducted with entire respect for the plaintiff's contentions, and with entire understanding of his position. The ruling which was adverse to him was required to be made by the law and the regulations, and accordingly the defendant's motion must be granted, and the plaintiff's motion denied.

Settle order.